**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PLAINTIFFS MOISES JAVIER AGUILAR PERALTA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br> Defendants. | No.: 2:26-cv-00337 <br><br> District Judge Sarah D. Morrison <br> Magistrate Judge Chelsey M. Vascura |

## AMENDED DECLARATION

I, Steven Vorholt, hereby declare as follows:

1. I am employed by U.S. Customs and Border Protection (CBP). CBP is charged with enforcing the Nation's immigration laws to protect national security and uphold the integrity of the immigration system. As part of this mission, CBP officers and agents are responsible for preventing the unlawful entry of individuals into the United States and apprehending those who attempt to enter illegally or who have violated the immigration laws. Through these activities, CBP seeks to secure the border, disrupt human smuggling and trafficking networks, and ensure consistent enforcement of the immigration laws of the United States.

2. I am currently assigned to the U.S. Border Parol as the Acting Deputy Patrol Agent in Charge at the Sandusky Bay Station within U.S. Border Patrol's Detroit Sector. The Detroit Sector is responsible for 863 miles of international boundary with Canada, all of which is located on water. Additionally, Detroit Sector's area of responsibility includes 178,000 square miles in the states of Michigan, Indiana, Illinois and the entire state of Ohio. The Sandusky Bay Station

is responsible for western and central Lake Erie and seven border counties along Lake Erie. This area includes the cities of Norwalk and Toledo, Ohio.

3. I entered on duty with the U.S. Border Patrol on October 24, 2005 with my first duty assignment in Ajo, Arizona. I transferred to Sault Ste. Marie, Michigan in 2008 and served as a Task Force Agent with the Michigan State Police Straights Area Narcotics Enforcement Team and the United States Coast Guard Investigative Service. I also served as a Supervisory Border Patrol Agent while assigned to Sault Ste. Marie. In 2020, I was transferred to the Sandusky Bay Station as the Watch Commander. In this role, I report to the Patrol Agent in Charge and Deputy Patrol Agent in Charge, and I am responsible for all station operations during my assigned shift to include: various enforcement, detention and processing operations; seized property; fleet and facility maintenance and supplies; office and personnel management, and; community relations and outside agency partnerships. I oversee multiple units and their supervisors at the Sandusky Bay Station and direct the allocation of resources. While assigned to the Sandusky Bay Station, I have also served as an Acting Deputy Patrol Agent in Charge and the Acting Patrol Agent in Charge. I have over 11 years of first line and second line supervisory experience.

4. The statements contained in this declaration are based upon my personal knowledge and information made available to me in the course of my official duties. This amends and supplements my declaration previously signed and submitted on May 6, 2026.

5. Prior to April 22, 2025, Detroit Sector Targeting and Intelligence Division, determined that Plaintiff with initials F.M. continuously stayed in the United States past the December 13, 2024 expiration date of his J-1 (exchange visitors) visa and the allotted grace period for his departure. On April 22, 2025, Border Patrol agents observed a vehicle registered to F.M. driving southbound on a public roadway and subsequently located that vehicle where it was parked at a

Walmart Supercenter in Norwalk, Ohio. Border Patrol agents observed an individual that appeared to match the description of F.M. Border Patrol agents approached F.M. while he was walking from his vehicle and verified his identity. F.M. confirmed that he entered the United States on a visa and admitted to overstaying his visa. F.M. further stated that he had "a pending case," and Border Patrol agents advised that they would transport F.M. back to the station to figure out his pending case.

6.     It was believed that F.M. would likely flee the area if Border Patrol agents left him at Walmart in order to verify his claims or to obtain a Warrant for Arrest for Alien (DHS Form I-200). This belief was based upon factors including: F.M. intentionally disregarded his conditions of admission into the United States by overstaying his visa and grace period allotted for departing the United States; the inability of Border Patrol agents to confirm a valid/permanent address for F.M., and; after agents identified themselves as Border Patrol agents, F.M. gained knowledge of the investigation into his visa overstay investigation and was likely to evade apprehension.

7.     Border Patrol agents subsequently placed F.M. under arrest and transported him to the Sandusky Bay Station for further processing, to include biometric verification of F.M's identity and any adjustment of status.

8.     At the Sandusky Bay Station, F.M.'s fingerprints and biographical information were entered into the Integrated Automated Fingerprint and Biometric Identification System (IDENT/IAFIS). The results of the IDENT/IAFIS query biometrically confirmed F.M.'s identity, and that he had not obtained adjustment of status or otherwise had legal authorization to remain in the United States. Border Patrol agents served F.M. with a copy of the Warrant for Arrest for Alien and with a Notice to Appear (DHS Form I-862) alleging a violation of section

237(a)(1)(B) of the Immigration and Nationality Act (INA) in that after admission into the United States under INA section 101(a)(15), F.M. remained in the United States longer than permitted by his J1 visa.

9.      On or around September 30, 2025, the Sandusky Bay Border Patrol Station received information that an alien illegally present in the United States was living at a residence in Toledo, Ohio.  A Border Patrol agent assigned to the Detroit Sector Targeting and Intelligence Division determined that Plaintiff Jose Armando De Leon Zapata entered the United States without inspection and had no legal authorization to be in or remain in the United States.  On or around May 22, 2026, I learned that an addendum to the I-213 was issued on May 13, 2026 to correct Zapata's manner of entry into the United States.  Zapata entered the United States through the Laredo Port of Entry on 05/26/2022, his H2A nonimmigrant visa expired on 07/15/2022.

10.     The Border Patrol agent observed an individual that appeared to match the description of Zapata at the Toledo residence.  That individual was observed entering the passenger side of a vehicle and the agent contacted the Toledo Police Department, who later conducted a traffic stop under its own authority.

11.     The Border Patrol agent responded to the scene, identified himself, and performed an immigration inspection of the individual.  The Border Patrol agent positively identified Zapata, and Zapata admitted to his identity and immigration status.

12.     The Border Patrol agent believed that Zapata would likely flee the area if the Border Patrol agent left to obtain an arrest warrant.   This belief was based upon factors including: Zapata did not possess any documents to remain in the United States legally and therefore was out of status; the Toledo residence where Zapata was seen departing was associated with a

criminal narcotics investigation, and; after the agent identified himself as a Border Patrol agent, Zapata gained knowledge of the investigation into his immigration violations and was likely to evade apprehension. Zapata was subsequently transported to the Sandusky Bay Station for further processing.

13.     At the Sandusky Bay Station, Zapata's fingerprints and biographical information were entered into the IDENT/IAFIS. The results of the IDENT/IAFIS query biometrically confirmed Zapata's identity, and that Zapata had no legal authorization to be in or remain in the United States.

14.     Additionally, a Border Patrol agent asked Zapata for consent to search his cell phone, which Zapata provided. On the back of the phone, the Border Patrol agent observed a white powdery substance that field tested positive for the characteristics of cocaine. Zapata was provided with a copy of a Notice to Appear (DHS Form I-862) alleging a violation of INA section 212(a)(6)(A)(i) in that he was present in the United States without being admitted or paroled, or that he arrived in the United States at a time or place other than as designated by the Attorney General of the United States.

15.     The Notice to Appear further alleged that Zapata, as an immigrant, at the time of application for admission, was not in possession of documents required by regulations issued by the Attorney General of the United States under INA section 211(a).

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _2nd day of June 2026 at Ottawa County, Ohio

_____

Steven Vorholt